IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| ROBERT LEE REICH,<br><br>      Plaintiff,<br><br>    vs.<br><br>DETENTION OFFICER JOHN<br>SULLIVAN, CHIEF MARK<br>JOHNSON, CAPTAIN RAY<br>VAUGHN, and THE CITY AND<br>COUNTY OF BUTTE-SILVER BOW,<br><br>      Defendant. | CV 24–52–BU–DWM<br><br><br>ORDER |

Plaintiff Robert Reich, a state pretrial detainee proceeding pro se, alleges that his constitutional rights were violated when he was not provided with toothpaste at the Butte-Silver Bow Detention Center for several weeks. (Doc. 1.) He names as defendants Detention Officer John Sullivan, Chief Mark Johnson, Captain Ray Vaughn, and the City and County of Butte-Silver Bow (collectively, "Defendants"). (*Id.*; Doc. 36 at 1 n.1.) Defendants have moved for summary judgment on the ground that Reich was not denied toothpaste and, even if he had been, he cannot show that Defendants were deliberately indifferent. (Docs. 55–59, 61.) Reich opposes. (Doc. 60.) For the reasons stated below, Defendants' motion is granted.

1

## BACKGROUND

The following facts are undisputed unless otherwise noted, (*see* Doc. 57), and viewed in the light most favorable to Reich, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

## I.    Reich's Claims

During the timeframe of April to August 2024, Reich was a pretrial detainee at the Butte-Silver Bow Detention Center (the "Detention Center") in Butte, Montana.  (Doc. 57 at ¶ 1.)  In May and June 2024, Reich filed several grievances alleging that he was denied toothpaste for multiple weeks.  (*See* Doc. 4.)  In response to those grievances, prison staff indicated that toothpaste had been on back order and therefore they were trying to obtain some from a different vendor. (*See id.*)  While Reich alleges that the lack of toothpaste resulted in toothaches and bad breath and that he suffered heartburn caused by alternative products, (*see* Doc. 1 at 5), Reich did not submit any requests for medical or dental treatment, (Doc. 57 at ¶ 28).  Although it is not entirely clear from the record, it appears Reich was without toothpaste from mid-May 2024 to mid-June 2024.[1]  (*See* Docs. 1, 4, 60.)

## II.    Toothpaste Procurement

Chief Johnson was responsible for ordering the hygiene products for inmates

---

[1] Filings by other inmates indicate that there was another period in July 2024 when there was no toothpaste provided; however, that period post-dates the filing of Reich's Complaint, (*see* Doc. 1).

at the Detention Center from the Bob Barker Company ("Bob Barker"), which is a nationwide supplier for federal, state, and local corrections and detention facilities. (Doc. 57 at ¶ 4.)  On April 29, 2024, Johnson ordered 10 cases of toothpaste from Bob Barker, each containing 144 .85-ounce tubes of NatureMint toothpaste.  (*Id.* ¶ 5.)  The Detention Center received that order within a week or less.  (*Id.* ¶ 6.)

On May 2, 2024, Johnson ordered an additional 15 cases of toothpaste from Bob Barker.  (*Id.* ¶ 9.)  Upon placing that order, Johnson was notified that the toothpaste was on "backorder and would ship separately" from the remainder of the Detention Center's order.  (*Id.* ¶ 10 (alteration omitted).)  There is no indication the Detention Center ever received this order.

On June 11, 2024, Johnson ordered 4 cases containing 1,000 .28-ounce packets of NatureMint toothpaste from Bob Barker.  (*Id.* ¶ 11.)  Upon placing that order Johnson was once again informed that the toothpaste was on "backorder and would ship separately."  (*Id.* ¶ 12 (alteration omitted).)  There is no indication that the Detention Center ever received this order.

On June 14, 2024, Johnson ordered 4 cases containing 240 .85-ounce tubes of Colgate toothpaste from Bob Barker.  (*Id.* ¶ 13.)  The Detention Center received this order during the week of June 17, 2024.  (*Id.* ¶ 14.)

In July 2024, inmates complained about toothpaste because tubes were not available for purchase at the canteen.  (*Id.* ¶ 16.)  As a result, on July 16, 2024, the

3

Detention Center purchased additional toothpaste from the Dollar Tree in Butte. (*Id.* ¶ 17.)  This toothpaste was provided to inmates individually in plastic cups distributed by detention staff.  (*Id.* ¶ 16.)  According to Defendants, each cup provided enough toothpaste to last for one week but additional toothpaste could be distributed upon request.  (*Id.*)

On August 9, 2024, Johnson ordered 1 case containing 1,000 .15-ounce packets of Colgate toothpaste and 5 cases containing 240 .85-ounce tubes of Colgate toothpaste from Bob Barker.  (*Id.* ¶ 18.)  This order was received by the Detention Center the week of August 12, 2024.  (*Id.* ¶ 19.)  In the interim, on August 11, 2024, the Detention Center purchased additional toothpaste from the Dollar Tree in Butte, which was once again distributed in plastic cups.  (*id.* ¶ 23.)

On September 6, 2024, Johnson ordered 8 cases containing 240 .85-ounce tubes of Colgate toothpaste from Bob Barker.  (*Id.* ¶ 25.)  The Detention Center received this order the following week.  (*Id.* ¶ 26.)

According to Johnson, "[e]ach inmate/pretrial detainee uses approximate one tube [of toothpaste] per week."  (Doc. 58 at ¶ 11.)  With an average inmate population of 134 individuals, Johnson opines there would have been more than enough toothpaste received in the above orders to satisfy all inmate needs.  (*See id.* at ¶¶ 10, 11, 18, 23, 24, 30.)

### III.    Procedural Background

On June 28, 2024, Reich filed suit, alleging that the lack of toothpaste

violated his Eighth Amendment rights.  (Doc. 1.)  On August 14, 2024, Defendants

were ordered to answer, (Doc. 9), and they filed a motion to dismiss, (Doc. 17).

On January 10, 2025, that motion was granted as to Reich's requests for punitive

damages and to have his bail lowered.  (Doc. 36.)  Defendants' motion was

otherwise denied.  (*Id.*)  However, given Reich's status as pretrial detainee, his

claim is proceeding under the Fourteenth, as opposed to the Eighth, Amendment.

(*See id.* at 6–9.)  On January 22, 2025, Defendants answered.  (Doc. 37.)  A

scheduling order was entered, (Doc. 38), and Defendants filed the present motion

for summary judgment on May 21, 2025, (Doc. 55).  That motion was

accompanied by the requisite Rand notice, (Doc. 59), and Reich responded, (Doc.

60).

LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it impacts the outcome

of the case in accordance with governing substantive law.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is genuine "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving

party." *Id.* All reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014). Nonetheless, the nonmoving party must identify, with some reasonable particularity, the evidence that it believes precludes summary judgment. *See Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018) (explaining that while pro se parties are exempted from "*strict* compliance with the summary judgment rules," they are "not exempt[ed] . . . from *all* compliance[,]" such as the requirement to identify or submit competent evidence in support of their claims).

## ANALYSIS

The Due Process Clause requires that pretrial detainees be provided with adequate food, clothing, shelter, sanitation, and medical care. *See Shorter v. Baca*, 895 F.3d 1176, 1185 (9th Cir. 2018) (addressing outdoor exercise). To prove a due process violation based on the conditions of confinement, a plaintiff mush show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). The deprivation of basic hygiene items, such as toothpaste, can be considered a constitutional violation if it results in significant harm or poses a substantial risk of serious harm.

*See Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) ("Dental care is one of the most important medical needs of inmates.").

Here, Defendants assert that they are entitled to summary judgment on the grounds that: (1) the Detention Center had sufficient toothpaste for all inmates during the timeframe of Reich's allegations; (2) alternatives to toothpaste were sufficient to avoid a substantial risk of serious harm; and (3) Defendants took reasonable available measures to abate the risk.[2]  Because Defendants are correct as to (3), summary judgment is granted in their favor.

## A.    Toothpaste Supply

Defendants first argue that Reich's claim fails on the merits because the undisputed facts show that the Detention Center had sufficient toothpaste for all inmates during the relevant time frame.  This argument is not premised on any evidence or testimony as to conditions on the ground at the time; rather, Defendants argue there was sufficient, available toothpaste because, mathematically, the facility ordered enough toothpaste to equip the average inmate population of 134 individuals with one "tube" per week.  (*See generally* Doc. 57; Doc. 58 at ¶ 11.)  While Reich disagrees with how Defendants have counted the

---

[2] Defendants also argue that Reich has failed to meet the standard for municipal liability. *See Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019). Because Reich's Fourteenth Amendment claim fails on the merits, this argument is not addressed here.

number of inmates receiving toothpaste, his primary response is that "the fact[]
remains that [he] was without [toothpaste] for 7-8 weeks." (Doc. 60 at 2.)
Defendants' calculations about order amounts and average use does nothing to
undermine that assertion. There is a fundamental difference between whether there
should have been enough toothpaste and whether there actually was enough
toothpaste. A genuine fact despite remains as to this issue. (*See* Doc. 4 at 1 (June
6, 2024 grievance stating that inmates had been without toothpaste for 5 to 6
weeks).) Nevertheless, Defendants' efforts to obtain toothpaste and provide it to
inmates bears on whether they can be found constitutionally culpable as discussed
below.

### B.    Alternatives to Toothpaste

Defendants further argue that Reich's claim fails because even if he did not
have access to toothpaste, "using an alternative to toothpaste, such as brushing
with water, does not transcend the routine discomforts of jail." (Doc. 56 at 10.)
While Defendants once again proffer that at least one dental surgeon has opined
that "the greatest benefit of toothbrushing comes from the brush not the
toothpaste," (*id.* at 11 (quoting *Roshone v. Peters*, 2014 WL 4547031, at \*4 (D. Or.
Sept. 12, 2014)), they present no factual evidence to support that proposition.
Citing a letter a dentist wrote to an inmate in a separate case—a case decided on
exhaustion grounds—is not sufficient to prove that there is "no genuine dispute as

8

to any material fact" as to this issue.  Fed. R. Civ. P. 56(a).

**C.     Reasonable Available Measures**

Defendants further argue that Reich cannot show the third element under *Gordon* is met here. Given the record, that argument is persuasive.  "With respect to the third element [under *Gordon*], the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case."  *Gordon*, 888 F.3d at 1125 (cleaned up).  Ultimately, "the plaintiff must prove more than negligence but less than subjective intent— something akin to reckless disregard."  *Id.* (quotation marks and footnote omitted).  "The mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment."  *Id.* (quotation marks omitted).  Here, the undisputed facts show that Defendants consistently ordered or attempted to order toothpaste for the inmates.  (*See generally* Doc. 57.)  While there were delays in receiving toothpaste and Defendants did not immediately seek an alternative supply of toothpaste, the record does not support a finding that Defendants' failures amounted to reckless disregard.  To the contrary, the record shows that, despite the delay, Defendants took "reasonable available measures to abate th[e] risk," *Gordon*, 888 F.3d at 1125, including switching the type of toothpaste ordered and proactively buying toothpaste from a local vendor in the interim, (*see generally* Doc. 57).  Reich's claim therefore fails on this ground.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Defendants' motion for summary judgment (Doc. 55) is GRANTED. The Clerk is directed to enter judgment in favor of Defendants and close the case file.

DATED this _____ day of July, 2025.

_____
Donald W. Molloy, District Judge
United States District Court